1  Joshua E. Anderson (SBN 211320)
   janderson@sidley.com
2  Collin P. Wedel (SBN 278461)
   cwedel@sidley.com
3  SIDLEY AUSTIN LLP
   555 West Fifth Street, Suite 4000
4  Los Angeles, California 90013
   Telephone:  (213) 896-6000
5  Facsimile:  (213) 896-6600

6  Hille R. Sheppard (admitted *pro hac vice*)
   hsheppard@sidley.com
7  SIDLEY AUSTIN LLP
   One South Dearborn
8  Chicago, Illinois 60603
   Telephone: (312) 853-7000
9  Facsimile:  (312) 853-7036

10 Attorneys for Defendant Takeda
   Pharmaceuticals U.S.A., Inc.
11

12 **UNITED STATES DISTRICT COURT**

13 **CENTRAL DISTRICT OF CALIFORNIA**

| ALAN WEISBERG, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>TAKEDA PHARMACEUTICALS U.S.A., INC.<br><br>Defendant. | Case No. 2:18-cv-00784 PA (JCx)<br><br>Assigned to: Hon. Percy Anderson<br><br>**DEFENDANT TAKEDA PHARMACEUTICALS U.S.A., INC.'S REPLY IN SUPPORT OF ITS OBJECTION TO PLAINTIFF'S RELIANCE ON NEW EVIDENCE AND A NEW CLASS DEFINITION IN HIS REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION (DKT. 88)**<br><br>Date: July 16, 2018<br>Time: 1:30 p.m.<br>Place: Courtroom 9A<br>       350 W. First Street, 9th Floor<br>       Los Angeles, CA 90012 |
|---|---|

**DEFENDANT'S REPLY IN SUPPORT OF OBJECTION TO PLAINTIFF'S RELIANCE ON NEW EVIDENCE AND A NEW CLASS DEFINITION IN HIS REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

233304331

In addition to its caustic tone and overheated rhetoric, Plaintiff Devin "Alan" Weisberg's Response ("Response") to Defendant Takeda Pharmaceuticals U.S.A., Inc.'s ("Takeda") Objection to Plaintiff's reliance on new evidence and a new class definition in his class certification reply, *see* Dkt. 92, only compounds the unfairness that prompted Takeda's Objection. Takeda has no objection to proper rebuttal evidence. But Takeda does object to Weisberg's use of his *reply* brief to introduce *new* evidence and *new* class definitions that could and should have been included in the Motion. Weisberg's tactic is not "rebuttal," it is sandbagging, and it has deprived Takeda of the ability to substantively address the defects in Weisberg's new evidence and class definitions. This Court should strike the new evidence and class definitions or grant Takeda leave to file a brief sur-reply.

**I.    Weisberg's lack of diligence—not any "scam" or "shenanigans" by Takeda—is the only reason for his tardy evidence and class definitions.**

Weisberg contends that his tardy evidence and class definitions are excusable because Takeda's "gamesmanship," "shenanigans," and "broken promises" somehow prevented him from obtaining the evidence at issue before filing his Motion. Dkt. 92 at 3-4. Weisberg's assertions are untrue.

The *first time* that Weisberg asked Takeda for *any* discovery was on May 31, 2018—four months after the case was filed, more than three weeks after this Court denied Takeda's motion to dismiss, *see* Dkt. 64, and only 11 days before his Motion was due. Contrary to Weisberg's contention that Takeda "could have . . . made [Mr. Woods] available for deposition earlier," Dkt. 92 at 5, Weisberg never requested an earlier date—as reflected in the Joint Rule 26(f) Report, June 25 was the date that Weisberg chose. *See* Dkt. 76 at 5. Moreover, Takeda more than kept its promises about producing documents. Weisberg *never even served a formal document request*, but instead, on May 31, asked informally for Takeda to provide "as soon as possible (a) any records in its files related to Plaintiff, and (b) copies of the various iterations of Defendant's Trintellix Savings Card program website." *Id.*

-1-

at 5. On June 21—10 days sooner than the Federal Rules would have required, *see* Fed. R. Civ. P. 34(b)(2)(A)—Takeda produced about 6,000 pages of documents, consisting of Weisberg-related documents and hundreds of promotional materials, which was far more than what Weisberg had requested. Dkt. 76 at 5.

In sum, within 25 days of Weisberg first asking for discovery, Takeda had produced thousands of pages of documents and its Rule 30(b)(6) witness for a deposition. Had Weisberg requested these materials at the time of this Court's May 9, 2018, denial of Takeda's motion to dismiss, he would easily have had them in his possession before filing his Motion, 33 days later, on June 11. But he did not.

Weisberg's attempt to belatedly submit new evidence that he failed to obtain earlier only because of his own lack of diligence is not "rebuttal;" it is sandbagging. That is particularly true given that Weisberg had the burden of proof for each element of Rule 23, and had to meet that burden in his Motion. *See Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010 (C.D. Cal. 2018) ("[R]eply briefs are limited in scope to matters either raised by the opposition ***or unforeseen at the time of the original motion***." (emphasis added)). The fact that Takeda noted Weisberg's evidentiary failures in its Opposition does not give Weisberg license to tardily attempt to correct them in his Reply. This Court should reject Weisberg's late-filed evidence and class definitions for that reason alone.

## II. Weisberg's Response further mischaracterizes the new evidence on which he wishes to rely.

Weisberg's Response compounds the problems with his Reply by further mischaracterizing the evidence on which he seeks to rely, adding to Takeda's prejudice. In particular, Weisberg justifies his reliance on Woods's deposition testimony by contending that Woods's earlier-submitted declaration in support of Takeda's Opposition was a "sham." Dkt. 92 at 2. That is a patently untrue.

The "sham affidavit" rule is implicated only where there is a "clear and unambiguous" "inconsistency between a party's deposition testimony and . . .

-2-

1  affidavit." *Yeager v. Bowlin*, 693 F.3d 1076, 1080 (9th Cir. 2012). Woods's
2  deposition and declaration testimony are in perfect accord; Weisberg's arguments
3  to the contrary mischaracterize Woods's testimony. For instance, Weisberg claims
4  that Woods contradicted his declaration by testifying that the variations in the
5  marketing materials for the Savings Card program were "immaterial." Dkt. 92 at 2.
6  But Woods actually testified that the variations were numerous, that they were
7  material, and that individual patients would understand those marketing statements
8  differently. *See* Supp. Anderson Decl., Ex. A at 135:11-137:17, 144:24-145:11,
9  154:18-156:1, 168:10-170:13, 174:9-176:16, 192:5-15, 197:23-198:25.

10  Similarly, the Response claims that Woods admitted at his deposition that
11  certain variations in the Savings Card language were made "after this lawsuit was
12  filed." Dkt. 92 at 5; *see id.* at 7. But he actually testified that the change to the "Pay
13  as little at $10" language predated this lawsuit and had nothing to do with Weisberg
14  filing it. Supp. Anderson Decl., Ex. A at 138:2-141:23.

15  Finally, the Response contends that Woods "admitted" that Weisberg's class
16  exceeded 40 people and that, consequently, Takeda "abandon[ed] its numerosity
17  challenge." Dkt. 92 at 2. But Woods did nothing of the sort. To the contrary, he
18  testified about the number of Savings Card users and the number who might not be
19  able to obtain the $10/month price (although they would still receive the maximum
20  benefit available under the program), but did not give any testimony about the size
21  of Weisberg's class or the number of people who would actually fit within his class
22  definitions. *See* Supp. Anderson Decl., Ex. A at 90:8-94:15, 255:11-18. As
23  discussed below, there is no evidence of *anyone* falling into Weisberg's new
24  definition (including Weisberg), let alone that the number exceeds 40 people.

25  At bottom, there are no contradictions between Woods's declaration and his
26  deposition that would excuse Weisberg's use of his deposition testimony in Reply.

27
28

-3-
**DEFENDANT'S REPLY IN SUPPORT OF OBJECTION TO PLAINTIFF'S RELIANCE ON NEW EVIDENCE AND A NEW CLASS DEFINITION IN HIS REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
233304331

### III. Weisberg's Response exacerbates the problems with his belatedly modified class definitions.

Weisberg's Response also highlights the flaws in his newly defined classes. Again, Takeda takes no issue with Weisberg's ability to define proposed classes however he so chooses. But his delay in proposing new classes until after Takeda filed an Opposition is prejudicial. And the Response only adds to the problems plaguing Weisberg's new class definitions, and heightens the need for Takeda to address those problems if the Court is inclined to permit such late modifications.

For instance, Weisberg argues that numerosity is met under his new class definitions because "commercial insurance was a requirement for . . . eligibility" and that "15% of 236,000 eligible cardholders" would not have received the $10/month price. Dkt. 92 at 7. But he has no evidence of (a) the number of patients who actually registered with *any* card (as opposed to by website or phone), let alone the "Pay no more than $10*" card; (b) the number of persons who actually *used* the card (as opposed to registering or activating it); (c) the number of putative class members who reside in California; (d) the number of persons charged more than $10 who actually went through their purchase; or (e) the number of such persons who were actually "commercially insured," let alone commercially insured for Trintellix purchases. On this last point, it bears noting that Weisberg himself is not a member of his newly defined class, since he was *not* "commercially insured" for the one Trintellix prescription he challenges in this case—a fact about which he was warned by his insurer before he went through with his purchase. Opposition at 6-8.

### CONCLUSION

For the foregoing reasons, this Court should strike Weisberg's new evidence and new class definitions, and refuse to consider them in resolving the Motion. In the alternative, this Court should grant Takeda the opportunity to file a brief sur-reply responding to the new evidence and new class definitions.

-4-
**DEFENDANT'S REPLY IN SUPPORT OF OBJECTION TO PLAINTIFF'S RELIANCE ON NEW EVIDENCE AND A NEW CLASS DEFINITION IN HIS REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**
233304331

DATED: July 10, 2018

SIDLEY AUSTIN LLP

By: /s/ Joshua E. Anderson
Joshua E. Anderson

Attorneys for Defendant

-5-

**DEFENDANT'S REPLY IN SUPPORT OF OBJECTION TO PLAINTIFF'S RELIANCE ON NEW EVIDENCE AND A NEW CLASS DEFINITION IN HIS REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**

233304331